### ABBOTT, (HOWE v.)
[See Howe v. Abbott, Case No. 6,766.]

---

### Case No. 12.
### ABBOTT v. McCARTNEY.
[Holmes, 80.][1] •

Circuit Court, D. Massachusetts. Oct., 1871.

JUDICIAL SALE—GIVING CREDIT—CONVERSION.

A wagon and other articles, the property of an express company, then in possession of a

[1] [Reported by Jabez S. Holmes, Esq., and here reprinted by permission.]

stable-keeper, attached on mesne process in a suit against the company, were bought at sheriff's sale made under statute of Massachusetts, by the attaching creditors, under an agreement with the sheriff that credit should be given for the articles they might purchase at the sale until the decision of the suit in which the attachment was made. After the sale, the officer and the auctioneer instructed the stable-keeper not to deliver any articles sold, except on production of a receipt for the purchase-money, signed by the auctioneer. Before payment for the wagon, and while it was still in the stable-keeper's possession, and without the knowledge of the purchasers, it was distrained and sold by a United States collector of internal revenue, after notice to the express company, for non-payment of taxes due from the company. Held, that the right of property in the wagon vested by the sale in the purchasers, and that they could maintain trespass de bonis asportatis against the collector for its conversion.

[See Corfield v. Coryell, Case No. 3,230.]

At law. Action of trespass de bonis asportatis for a wagon; heard by the court on an agreed statement of facts. The plaintiffs, on the twentieth day of November, 1868, on a writ in their favor against the New England Express Company, caused a wagon and other goods, then the property of the express company, to be attached by a deputy-sheriff. Under the statute of Massachusetts authorizing the sale of property attached on mesne process, the deputy-sheriff employed an auctioneer to sell the property attached, including this wagon. The auction was held Dec. 9, 1868, on the premises of one Johnson, a stable-keeper, where the wagon then was. Many articles belonging to the express company were sold, and the wagon in question was struck off to the agent of the plaintiffs. There was an agreement between the plaintiffs and the deputy-sheriff that they need not pay for what they purchased at the sale until the suit should be decided. They did not pay for the wagon until Jan. 6, 1869, when they gave the deputy-sheriff a due bill for it and other articles purchased by them at the sale. After the sale, the stable-keeper was instructed by the deputy-sheriff and the auctioneer not to deliver any of the articles that had not already been taken away, unless the purchaser should bring a receipt from the auctioneer showing that the articles had been paid for. Among the articles left was this wagon. Nov. 13, 1868, the New England Express Company made their monthly return of receipts during the month of October preceding to the assistant-assessor, showing a tax due from the company for the month of October, amounting to $291.12. Thereafter, on Nov. 20, 1868, a notice that the tax had been assessed, and must be paid on or before the last week-day of November, was sent by the defendant, United States collector of internal revenue, to the New England Express Company. On the third day of December, the tax not having been paid, another notice was sent to the express company by the defendant, that if the same were not paid within ten days, with a penalty of five per cent

additional, it would be collected by distraint and sale of property; and accordingly on Dec. 19, 1868, the defendant distrained the wagon in question for said taxes. The wagon was then still on the premises of Johnson, not having been removed by the plaintiffs. On the same day, the defendant left at the office of the express company a notice bearing that date, addressed to E. B. Taft, of Boston, signed by the defendant, as collector, of distraint of two wagons stated to belong to the express company, for nonpayment of taxes due from the company, and that unless the taxes and penalty, with expenses of distraint, were paid before ten o'clock, A. M., of Jan. 2, 1869, the property would be sold by public auction on that day; and the wagon was accordingly so sold.

It was admitted that the taxes were legally assessed against the express company; and that the proceedings of the defendant, except as to notice of distraint and sale, and the proceedings of the state officer, were regular and according to law. No other notice or document of any sort relating to the distraint and sale was left with any one, but publication was duly made. One E. A. Taft was, at the time, auditor of the express company. There was no other person by the name of Taft at that time connected with or employed by the company. The plaintiffs knew nothing of the distraint of the wagon, or of the amount of the tax, or of the time or place of sale, until after their payment for the wagon.

George W. Esterbrook and Samuel C. Eastman, for plaintiffs.

John C. Ropes and Francis W. Hurd, for defendant.

SHEPLEY, Circuit Judge. It is contended on the part of the defendant that the plaintiff upon the facts in this case is not entitled to maintain an action of trespass de bonis asportatis. So far as the form of action is concerned, the principle of law contended for by the defendant is undoubtedly correct.

The general principle of law is, that, in order to sustain an action of trover, or trespass de bonis asportatis, the plaintiff must have had, at the time of the alleged taking or conversion, either possession or a right to the immediate possession of the goods; such a right as to be entitled to reduce the goods to possession when he pleased to do so. Bloxam v. Sanders, 4 Barn. & C. 941; Smith v. Milles, 1 Term R. 475, 480; Ward v. Macauley, 4 Term R. 489; Putnam v. Wyley, 8 Johns. 432; Muggridge v. Eveleth, 9 Metc. [Mass.] 233. Defendant contends that plaintiffs had not either property, possession, or the right to immediate possession, at the time of the alleged taking. He claims that the property of the express company had not been divested, and did not pass to the plaintiffs,

for the reasons that the sale to them was on credit, and that there was no actual delivery of the property. He contends, further, that the possession of Johnson was not the possession of the plaintiffs, and that the plaintiffs had not the right to possession until they paid the price, the officer having a special property in the goods until paid for. The case of Prouty v. French, 2 Pick. 586, is relied upon to show that no property passed by a sale upon credit made by an officer. The case of Prouty v. French was the case of a conditional sale on credit on execution. There a speedy sale was indispensable, and the proceeds were needed for the immediate satisfaction of the execution on which the sale had been made. The sale in this case was regulated by an entirely different statute, which provides for a sale on mesne process whenever the parties consent in writing, or whenever the property attached on mesne process may be liable to perish, waste, or greatly depreciate in value by keeping, or cannot be kept without great and disproportionate expense. The object is to hold the goods or the proceeds, in some form or other, till judgment shall be rendered. In reference to such a sale, the supreme court of Massachusetts (Morton, J.) say, in Crocker v. Baker, 18 Pick. 407, 412: "We do not perceive that the credit given by the officer forms any objection to the validity of the sale. The goods would not sell for less on a credit than they would for cash. The officer might, and probably would, make himself responsible for the price. But neither debtors nor creditors would be liable to suffer. Nor does the statute, expressly or by implication, prohibit this mode of sale."

The proceedings of the officer being legal, the property vested in the purchasers. There was an agreement between the sheriff and the plaintiffs that they should have credit on their purchases until the suit was decided. Where goods are sold, and nothing is said as to the time of delivery or the time of payment, and every thing the seller has to do with them is complete, the property vests in the buyer, so as to subject him to the risk of any accident which may happen to the goods, and the seller is liable to deliver them whenever demanded, upon payment of the price; but the buyer has no right to have possession of the goods till he pays the price. If goods are sold upon credit, and nothing is agreed upon as to the time of delivering the goods, the vendee is immediately entitled to the possession, and the right of possession and the right of property vest at once in him; but his right of possession is not absolute; it is liable to be defeated if he becomes insolvent before he obtains possession. Bloxam v. Sanders, 4 Barn. & C. 941. After the sale, the purchaser on credit was immediately entitled to the possession, and his right was not divested by the gen-

eral instructions given by the officer and the auctioneer to the stable-keeper, after the sale, not to deliver the articles sold to the purchasers until they should bring a receipt from the auctioneer showing they had been paid for. Abbott, the purchaser, had, under his agreement for credit, a right of immediate possession against the officer, subject only to be divested by the insolvency of the purchaser and a stoppage in transitu by the vendor. Consequently, he had the same right as against the stable-keeper, who was but the servant of the officer or auctioneer, as he was not a party to the instructions given to the stable-keeper, and does not appear to have assented to them.

After the sale, the express company was neither the owner nor the possessor of the property sold. The ownership was in the purchaser, and the possession was in the stable-keeper, as the agent of the officer or the auctioneer or the plaintiffs, certainly not as the agent of the express company. The notice, therefore, of the sale by the collector of internal revenue not having been given as required by law to the owner or possessor of the property, was insufficient, and the collector, at the time of the sale having no paramount lien on the property sold, must be considered as a trespasser. After the sale on execution, the sheriff became accountable for the proceeds of the sale. Any surplus of funds in his hands, beyond what might be required to satisfy the execution issued in the suit on which the property was attached and sold, would be liable to a subsequent attachment; but the mere fact that there was no actual delivery to the purchaser would not let in another creditor to a priority of title. The case of Lanfear v. Sumner, 17 Mass. 110, has no application to a case of this kind.

Judgment for plaintiffs.